UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| REBECCA JEAN LAMBING,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | ) | CASE NO. C13-5678-RSL-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Rebecca Jean Lambing proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1962.[1] She has a high school education and past relevant

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

work as a sales promotion representative, sales person cosmetic, and sales representative – barber and beauty equipment supplies. (AR 22, 147.)

Plaintiff filed a DIB application on August 11, 2009, alleging disability beginning December 31, 2006. She is insured for DIB through September 30, 2014. Her application was denied at the initial level and on reconsideration, and she timely requested a hearing.

On October 17, 2011, ALJ Robert P. Kingsley held a hearing, taking testimony from plaintiff and a vocational expert. (AR 29-54.) On December 30, 2011, the ALJ issued a decision finding plaintiff not disabled from December 31, 2006 through the present. (AR 11-23.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 14, 2013 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2006. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease of the cervical spine, status-post anterior

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

cervical discectomy and fusion of C6-7, depression, adjustment disorder, and pain disorder severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with specified exceptions.  She cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs.  She can occasionally balance, stoop, kneel, crouch, or crawl.  She can occasionally push or pull with her upper extremities and occasionally perform overhead reaching.  She must avoid even moderate exposure to hazards, and concentrated exposure to cold or vibration.  She can perform detailed, routine, repetitive tasks not involving written and oral instructions.  She can have few, if any, changes in the work setting.  With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as charge account clerk, addresser, and call out operator.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a

whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erroneously found her "left cavernous internal carotid artery aneurysm" non-severe at step two, failed to properly evaluate the opinion of Dr. Richard Wohns, and erred in assessing her credibility.   She requests remand for further administrative proceedings.   The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Step Two</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996 (quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect" of an individual's impairments in

considering severity. *Id*.

Plaintiff argues the ALJ erred in finding her "left cavernous internal carotid artery aneurysm" non-severe because it did not satisfy the durational requirement. She argues the ALJ failed to take into account the opinion of her doctor, Richard Wohns, M.D., that her "headaches, blackouts, tremors, etc" could be related to this condition. (Dkt. 14 at 9; AR 475.)

However, the Court agrees with the Commissioner that the ALJ did not err in finding this condition non-severe. (AR 14.) Plaintiff was diagnosed with a "small" left cavernous internal carotid artery aneurysm in an MRI conducted on April 7, 2009. (AR 217, 227.) Her treating physician described the finding as "incidental[]", advising plaintiff the risk of rupture was "exceedingly low due to the overall small size of the aneurysm and smooth configuration." (AR 283.) Nevertheless, plaintiff remained "extensively anxious" about the aneurysm and wanted to proceed with treatment. (*Id*.) A successful coil embolization was performed on May 13, 2009. (AR 290-91.) At her follow-up appointment with Dr. Wohns on June 30, 2009, plaintiff reported she had resumed normal activity, was "very pleased with her outcome," and had no complaints. (AR 321.) On December 2, 2009, she reported to Dr. Wohns she felt she had not fully recovered from the procedure, had chronic occipital headaches, problems with short-term memory, and had blacked out the previous week. (AR 459.) Based on her report of headaches and a recent episode of weakness and dizziness, an MRI was conducted on June 9, 2010. The MRI was normal, with no evidence of a recurrent or residual aneurysm. (AR 540-41.) Another MRI was conducted on September 9, 2011. Again, there was no evidence for residual aneurysm. (AR 615-17.)

Plaintiff cites a chart note from Dr. Wohns in February 2010 as support for her

contention her left carotid artery aneurysm satisfied the durational requirement. "Disability" is an inability to engage in any gainful activity due to a medically determinable physical or mental impairment which has lasted or is expected to last for a continuous period of at least twelve months or to result in death. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff acknowledges this office visit occurred less than twelve months from the initial diagnosis, but argues the symptoms of headache and loss of consciousness persisted beyond that date.

The Court finds plaintiff's argument unpersuasive. The ALJ is responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008), and when the evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ here acknowledged Dr. Wohn's discussion with plaintiff about the possible relationship between her aneurysm and coiling procedure (AR 18, 475), but reasonably concluded plaintiff's aneurysm was successfully treated and did not continue to cause any limitations (AR 14). Plaintiff, as such, fails to establish error at step two.

<u>Opinion of Dr. Richard Wohns</u>

Plaintiff also argues the ALJ erred by failing to adopt an opinion that she "decrease work hours and driving time to part-time position." (AR 276.) She attributes the opinion to Dr. Wohns. As the Commissioner notes, however, the comment was not made by Dr. Wohns, but by Physician Assistant Tei Scott.

In evaluating the weight to be given to the opinion of medical providers, Social Security

regulations distinguish between "acceptable medical sources" and "other sources." [2] Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p. Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, SSR 06-3p, and the ALJ may discount the evidence by providing reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted). *See also* SSR 06-03p (ALJ should explain weight given to other source opinions or otherwise ensure that discussion of the evidence allows for following the ALJ's reasoning "when such opinions may have an effect on the outcome of the case.")

Here, the ALJ did not discuss PA-C Scott's suggestion that plaintiff should decrease her work hours and driving time to a part-time position. However, the Court finds harmless any error in failing to discuss the statement. *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted). While the ALJ's opinion should reflect consideration of such opinions when they "may have an effect on the outcome of the case", SSR 06-3p at *6, the comment in question falls short of that standard. Mr. Scott did not specifically limit plaintiff to

---

2 The record does not establish that Mr. Scott worked so closely under the supervision of Dr. Wohns that he could be seen to be working as an agent of that doctor. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). There is no evidence Dr. Wohns reviewed Mr. Scott's clinic note or approved it, and certainly no evidence Dr. Wohns was of the opinion plaintiff should be restricted to part-time work.

part-time work, or opine that it was "the most [plaintiff] could do despite [her] limitations," 20 C.F.R. § 404.1545(a) (defining RFC), and no other acceptable medical source put forth a similar restriction. The Court, as such, does not find error in either the ALJ's consideration of Dr. Wohn's opinions, or the above-referenced comment by PA-C Scott.

Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff alleged an inability to work because of extreme headache pain twenty-four hours a day, seven days a week. She says she cannot sleep more than three hours per night, and there are days she does not get out of bed or get dressed. She reports constant neck pain and muscle spasms in her shoulder blades radiating down her arms to her hands, upper extremity neuropathy aggravated by overhead work, and shooting pains out of her fingers. She is depressed and has difficulty focusing and concentrating. (AR 16.) The ALJ found plaintiff's

medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but her subjective complaints regarding the intensity, persistence, and limiting effects of her physical and mental impairments not entirely credible. (*Id.*)

Plaintiff argues the ALJ's adverse credibility determination was legally insufficient because it relied on "little more" than a lack of objective medical evidence, although plaintiff acknowledges the ALJ also gave "alternative reasons". (Dkt. 14 at 4.) Here, the ALJ did, in fact, rely on a number of separate grounds in making the credibility assessment.

A. Lack of Objective Medical Evidence Support

The ALJ noted the lack of objective medical evidence to support plaintiff's reports of extreme cervical pain. Following a cervical fusion, her doctor felt her symptoms were probably musculoskeletal in nature and did not recommend further surgery. She reported a lack of radicular symptoms, and her doctors recommended conservative treatment such as a TENS unit, muscle relaxants, physical therapy, regular exercise, and cognitive behavioral therapy. (AR 17.) Despite her claims of hand numbness, a head CT scan showed no abnormalities. Despite her reports of constant headaches that prevent her from bending and cause extreme pressure in her head, imaging studies did not support her allegations. (AR 19.) The ALJ noted that "none of the doctors or images have findings that support the severity of symptoms alleged by the claimant." (AR 20.)

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p. The ALJ, in this case, properly

relied, in part, on the lack of corroborating medical evidence.

B. Response to Pain Medication

The ALJ contrasted plaintiff's reports of severe headaches and upper neck pain unresponsive to all medication, with reports that her medication was very beneficial and helping greatly with her ability to perform activities of daily living and her quality of life. (AR 17, 331, 404.) (*See also* AR 340, 364.)[3] The ALJ, as such, properly considered plaintiff's inconsistent reporting of symptoms. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). *See also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.")

The ALJ also cited plaintiff's positive response to pain management treatment by Dr. Kim, who took her off narcotic pain medication and prescribed a fentanyl patch. Dr. Kim also noted excessive pain expression and questionable Waddell signs. (AR 19, 484.) The ALJ, accordingly, properly considered these factors as an additional basis for the credibility determination. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence).

C. Marijuana Use

The ALJ noted an inconsistency between plaintiff's report to an emergency room doctor on February 15, 2010 that she was not able to find a pain management doctor because she tested positive for marijuana, which she took for nausea (AR 479), and her statement to an ARNP on

3 The Court cites these additional references not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position." *Warre v. Comm'r of the SSA*, 439 F.3d 1001,1005 n.3 (9th Cir. 2006).

February 25, 2010 denying marijuana use, but admitting when confronted with a positive urine test that she was using it for sleep. (AR 466.) This evidence of a lack of candor regarding drug usage supported the ALJ's negative conclusions about plaintiff's veracity. *Thomas*, 278 F.3d at 959.

D. Efforts to Obtain Pain Medication and Failure to Pursue Treatment

The ALJ cited the refusal of ARNP Jesse and Dr. Taggart to provide additional pain medication and noted that plaintiff "appeared to visit numerous providers for pain medication". (AR 19, 20, 466.) The ALJ, therefore, also properly considered evidence of exaggeration of pain to receive pain medication in the credibility assessment. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *amended opinion* at 2001 U.S. App. LEXIS 17960 (Aug. 9, 2001).

Dr. Wohns recommended that plaintiff see a psychiatrist in response to her insistence that "very tiny" bits of metal were causing her problems, but plaintiff refused, saying she had already seen two psychiatrists. She indicated she would be okay if she was given medical marijuana. (AR 18, 475.) Dr. Taggart discharged her as a patient after she missed too many appointments. (AR 18, 459.) This failure to seek or follow through with treatment properly served as an additional basis for the credibility decision. *Molina*, 674 F.3d at 1113-14 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008)).

E. Reported Activities

The ALJ cited activities performed by plaintiff, such as occasional household chores like ironing and laundry, and her ability to fly to Los Angeles in September 2011 as inconsistent

with her claims of extreme pain. (AR 20.) A claimant's activities may be used as support for an adverse credibility determination if the activities contradict the claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

While plaintiff notes the ALJ failed to mention her reported worsening of symptoms following the flight, the Commissioner argues that plaintiff's ability to embark upon a multi-hour flight such as this may be seen as inconsistent with her reported problems of sitting in an upright position and having swelling in her legs. (AR 183, 607.) *See, e.g., Tommasetti*, 533 F.3d at 1040 (ALJ properly inferred from evidence of claimant's travel that he was not as limited as alleged). Here, while plaintiff takes a different view of the evidence, she fails to demonstrate the ALJ's interpretation of the evidence was not rational. *See generally Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.") (cited sources omitted). For this reason, and for the reasons stated above, plaintiff fails to demonstrate any error in the credibility assessment.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 11th day of March, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge